IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

CHRISTOPHER CARLSON,

                Plaintiff,          OPINION AND ORDER

v.

                                                21-cv-077-wmc

SYNCHRONY BANK,

                Defendant.

---

Plaintiff Christopher Carlson claims Synchrony Bank ("Synchrony") violated the Fair Credit Reporting Act ("FCRA") by mistakenly requesting his credit report. Synchrony has now moved for summary judgment. For the reasons set forth below, the court will grant summary judgment in favor of the defendant on the merits.[1]

## UNDISPUTED FACTS

Synchrony Bank is a savings association which issues credit card accounts, among other services. On August 27, 2019, Synchrony received an online application for a PayPal credit card, which included Christopher Carlson's social security number ("SSN"), apparently as the result of the applicant mistyping his or her own SSN. As a part of the

---

[1] While neither party raised standing in their briefing, the court is obliged to address the question of jurisdiction briefly at the outset. Plaintiff alleges that he suffered "damage to reputation, emotional distress and interference with Plaintiff's normal and usual activities" when his credit report was accessed. (Compl. (dkt. #1) ¶ 41.) While plaintiff did not allege that his credit scored decreased in his complaint, he did suggest in his proposed findings of fact that "the hard inquiry was negatively affecting his credit report." (Pl.'s Opp'n (dkt. #22-1) 2.) Ultimately, even if Carlson's credit score did *not* decrease, the most recent pronouncement on this matter from the Seventh Circuit analogized dignitary harms related to privacy to the tort of intrusion upon seclusion, and on that basis, found standing to proceed. *Persinger v. Sw. Credit Sys.*, L.P., 20 F.4th 1184, 1191 (7th Cir. 2021). Accordingly, plaintiff's claim for reputational damages alone appears to be sufficient to establish standing.

application process, Synchrony in turn requested a credit report erroneously using Carlson's SSN and a PayPal credit card was ultimately issued.

The creation of a PayPal credit card account was noted on Carlson's credit history. Once made aware of this, Carlson then contacted Synchrony on September 2, 2019, advising the bank that he had *not* opened a PayPal credit card account. Within three weeks of being notified of its error, Synchrony contacted all credit reporting agencies to request that the PayPal account be removed from Carlson's credit report.

While the existence of the PayPal account itself was then deleted from Carlson's credit file, the original hard inquiry as to his credit associated with the account remained. Carlson contacted Synchrony again in May 2020, requesting that the credit inquiry itself be removed from his credit file, but that hard inquiry apparently remains on Carlson's credit file.

OPINION

Summary judgment must be granted against a party who fails to make a showing sufficient to create a least the existence of a genuine issue of material fact as to any element essential to a claim on which that party will bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). A dispute of material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (citation omitted). Finally, "[t]he evidence of the non-movant[s] is to be believed, and all justifiable inferences are to be drawn in [their] favor." *Id.* at 255.

Because the parties appear to raise *no* material, disputed facts on any of the essential

2

elements of plaintiff's claim, the defendant's motion for summary judgment would appear to hinge on the court's resolution of a single, legal issue: did defendant Synchrony's mistaken request for Carlson's credit report violate any provision of the FRCA?[2] Under the FCRA, credit reporting agencies may furnish a report "to a person which it has reason to believe . . . otherwise has a legitimate business need for the information . . . in connection with a business transaction that is initiated by the consumer." 15 U.S.C.A. § 1681b(a)(3)(F)(i). Carlson's main argument is Synchrony lacked a "permissible business purpose" because he never initiated a business transaction with it himself.

While the Seventh Circuit has yet to address this issue, the Sixth Circuit decision *Bickley v. Dish Network, LLC*, 751 F.3d 724, 732 (6th Cir. 2014), squarely rejected it, as have other district courts within this circuit, having adopted the reasoning in *Bickley*. *E.g.*, *Heim v. Comcast Cable Commc'ns LLC*, No. 18-CV-07962, 2020 WL 9211285, at *2 (N.D. Ill. June 1, 2020); *Newlin v. Comcast Cable of Indiana*, Inc., No. 2:12-CV-430-TLS, 2015 WL 363426, at *3 (N.D. Ind. Jan. 27, 2015).

*Bickley* involved a case of identity theft in which a third party applied for a Dish Network account using a false name and plaintiff Bickley's stolen SSN, causing Dish to request plaintiff's credit report. 751 F.3d at 726. The Sixth Circuit nevertheless found that Dish Network's good faith act of determining a customer's eligibility for a service was a legitimate business need:

> [A]t the time Dish allegedly accessed Bickley's credit report, it believed that he was a potential consumer. Following the

---

[2] Plaintiff concedes that defendant is entitled to judgment on Count III, alleging that Synchrony failed to reinvestigate Carlson's dispute, as Equifax never forwarded a copy of Carlson's dispute to Synchrony. (Pl.'s Opp'n. (dkt. #22-2) 2.) As such, summary judgment is granted on Count III.

3

> relevant case law, Dish had a "legitimate business need" to request his consumer report. We reject the contention that a company, dealing with an imposter purporting to be the consumer, should be held liable when the company attempts in good-faith to verify the consumer's identity and eligibility for commercial services. To hold otherwise would twist the underlying purpose of the statute.

*Id*. at 732.

Drawing from *Bickley*, Synchrony argues that it had a legitimate business need for Carlson's report because it believed he was applying for a service. Acknowledging that the *Bickley* decision undermines his claims, Carlson attempts to distinguish it by noting that there is no alleged identity theft in his case. However, that distinction has no impact on the applicability of *Bickley's* holding here. If anything, it strengthens it. Synchrony, like Dish, had reason to believe that a legitimate customer was requesting an account, leading the company to pull the associated credit file. The fact that the potential customer here entered an SSN by mistake, and the potential customer in *Bickley* entered it with an attempt to commit fraud is irrelevant to Synchrony. Indeed, not only Synchrony, but its potential customer, acted in good faith.

As previously noted, Carlson argues that Synchrony could not have had a "legitimate business need" because a third party, not Carlson, initiated the PayPal account transaction. (Pl.'s Opp'n. (dkt. #22-2) 3.) However, this argument was easily rejected in *Bickley*; that "reading of the statute blithely ignores that a consumer did initiate the transaction, and that Dish believed in good faith that Bickley was 'the consumer.'" *Bickley,* 751 F.3d at 732-733. Similarly, there is no evidence on this record that Synchrony had *any* idea, much less reason to believe, that the report it was requesting was connected to

4

someone other than the person requesting the PayPal account, and Carlson does not argue that Synchrony could or should have known the SSN listed in the application was wrong. Given that Synchrony reasonably believed that Carlson was the consumer, common sense supports the finding that Synchrony had a legitimate business need "in connection with a business transaction . . . initiated by the consumer." 15 U.S.C.A. § 1681b(a)(3)(F)(i).

Carlson also attempts to argue that the "reasonable belief" standard only applies to consumer reporting agencies ("CRAs"), not businesses like Synchrony. However, the FCRA states that "any consumer reporting agency may furnish a consumer report . . . to a person which it has *reason to believe*" meets certain qualifications. 15 U.S.C.A. § 1681b(a)(3) (emphasis added). While this language appears to apply to consumer reporting agencies in particular, later language then expressly authorizes a business to request information from CRAs provided it has "a legitimate business need for the information . . . in connection with a business transaction that is initiated by the consumer." 15 U.S.C.A. § 1681b(a)(3)(F)(i). Moreover, defendant notes the Fourth Circuit found the 'reason to believe' language "equally applicable to a user" like Synchrony. *Korotki v. Thomas, Ronald & Cooper, P.A.*, 131 F.3d 135 (4th Cir. 1997).

As a rhetorical matter, the reasoning of the Sixth Circuit in *Bickley* may not be in total harmony with that of the Fourth Circuit in *Korotki*, given that the *Bickley* opinion explicitly refused to equate the language of 15 U.S.C.A. § 1681b(a)(3) and § 1681b(a)(3)(F)(i), finding "[n]ot only are these distinct statutory sections, but *they also contain distinct standards* on the basis that a credit reporting agency, unlike a regular business, provides a gatekeeper function for sensitive credit information." 751 F.3d at 731

(emphasis added).  Similarly, the court in *Bickley* looked at the reasonableness of Dish's belief in requesting a credit report, but not necessarily because it found the 1681b(a)(3) equally applicable to CRAs and businesses.  *Id*. at 733 (finding that, "Dish reasonably believed the transaction was initiated by the consumer").   However, these arguable distinctions in analysis venture into the weeds unnecessarily here, especially since plaintiff's cursory argument did not even raise it.  More important than where each court draws its reasoning, courts have consistently emphasized the reasonableness of an entity's belief that the consumer initiated a transaction as the driver of liability under the FCRA, and plaintiff has provided *no* caselaw rejecting this approach.  *Cf., Heim v. Comcast Cable Commc'ns LLC*, No. 18-CV-07962, 2020 WL 9211285, at *2 (N.D. Ill. June 1, 2020) ("Comcast had a permissible purpose for its first request for Heim's credit report because it reasonably believed that she was initiating a business transaction with it"); *Danehy v. Jaffe & Asher, LLP*, No. 5:14-CV-60-FL, 2015 WL 1249879, at *5 (E.D.N.C. Mar. 17, 2015) ("[t]he court finds the weight of this authority persuasive and adopts the 'reasonable belief' standard").  If there were evidence that Synchrony had *any* inkling that the application it received contained the wrong SSN, the question of reasonable belief may be allowed to proceed past summary judgment, but there is zero evidence to that effect here.

      Finally, plaintiff argues in the alternative that he should be allowed to conduct discovery on Synchrony's state of mind.  (Pl.'s Opp'n. (dkt. #22-2) 5-6.)  This argument is a classic case of too little, too late.  First, Carlson already had ample time to take discovery on this issue but failed to do so.  Indeed, both sides chose to engage in minimal discovery, making any lost opportunity self-inflicted.  The time for discovery was during

6

the seven, full months allotted for discovery, including the court's extension of the discovery deadline at parties' request. (Dkt. #19.) Second, at no point in this case has Carlson even hinted that Synchrony knew or should have known that the SSN was incorrect, suggesting that any discovery would be fruitless.

In the end, the only evidence that matters relates to Synchrony's having a legitimate purpose to pull plaintiff's report in the first place, which occurred here before it saw what the report contained or who it concerned. *Heim v. Comcast Cable Commc'ns LLC*, No. 18-CV-07962, 2020 WL 9211285, at *2 (N.D. Ill. June 1, 2020) ("[n]othing . . . suggests that, prior to its receipt of Heim's credit report, Comcast had reason to believe that the person seeking to open an account in Heim's name was not, in fact, Heim"). Indeed, the court struggles to think of a situation in which Synchrony, a large financial institution, could have known that one, anonymous applicant mistyped his or her own SSN before pulling the associated report, and plaintiff provides no compelling evidence that it did.

ORDER

IT IS ORDERED that defendant Synchrony Bank's motion for summary judgment (dkt. #20) is GRANTED.

Entered this 2nd day of May, 2022.

BY THE COURT:

/s/

_____
WILLIAM M. CONLEY
District Judge